ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| UNIÓN DE MAYORISTAS COOP<br><br>Parte Peticionaria<br><br>v.<br><br>JOSÉ W. FLORES SANTOS, ET AL.<br><br>Parte Recurrida | KLCE202500423 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2024CV06173<br><br>Sala:  403<br><br>Sobre:<br><br>Cobro de Dinero Ordinario, Daños, Incumplimiento de Contrato |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 30 de abril de 2025.

Compareció ante este Tribunal la parte peticionaria, Unión de Mayoristas Coop. (en adelante, "Unión" o "Peticionaria"), mediante recurso de *certiorari* presentado el 21 de abril de 2025. Nos solicitó la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "TPI"), el 20 de marzo de 2025, notificada y archivada en autos al día siguiente. A través de dicho dictamen, el TPI declaró "Ha Lugar" la "**Solicitud Conjunta de Descalificación al Amparo del Canon 28 de [É]tica Profesional; y Solicitud de Paralización de los Procedimientos**" (en adelante, "Solicitud de Descalificación") interpuesta por el Sr. José W. Flores Santos (en adelante, el "señor Flores Santos") y WS Stores Corp. h/n/c Supermercados Agranel Wilby's (en adelante, "Supermercados Agranel") (en adelante y en conjunto, "los Recurridos").

Por los fundamentos que expondremos a continuación, *denegamos* la expedición del auto de *certiorari* ante nos.

**I.**

Los hechos que originan la controversia que tenemos ante nuestra consideración surgen tras la presentación de una "**Demanda**" por parte de la

Peticionaria en contra de los Recurridos y otros codemandados desconocidos sobre incumplimiento de contrato, cobro de dinero y daños y perjuicios. Mediante la misma, expresó que el Recurrido es socio de la Unión, motivo por el cual está sujeto a las normas, reglas y políticas de la cooperativa, así como a las obligaciones contractuales contraídas con dicha entidad. Señaló que el señor Flores Santos es dueño de los Supermercados Agranel, cuya empresa ha estado adquiriendo mercancía a crédito de la Unión. Indicó que el acuerdo entre la Unión y sus socios dispone que cada miembro tiene la potestad de poner una orden de compra en la cooperativa, y que la mercancía podrá ser recogida tres (3) días después de haberse emitido dicha orden. Expresó que toda mercancía entregada a crédito debe ser pagada en su totalidad por cada socio de la cooperativa dentro de los treinta (30) días posteriores a su despacho. Manifestó que el señor Flores Santos se comprometió a acatar las normas y políticas relativas al pago de la mercancía entregada a crédito, beneficiándose del recibo de la mercancía sin tener que efectuar el pago inmediatamente al momento de recibir la misma.

Asimismo, sostuvo que, en el transcurso del año 2024, el señor Flores Santos comenzó a incumplir con su obligación de saldar en treinta (30) días la totalidad de la deuda correspondiente a la mercancía entregada a crédito. Mencionó que, durante el verano del 2024, la Junta de Directores de la Unión le envió al Recurrido un memorando confidencial dirigido a todos los socios de la cooperativa, en el cual se abordaba una situación de conflicto de intereses con un competidor, en la que estaban involucrados dos (2) socios, incluido el señor Flores Santos. Añadió que, además de dicha situación, el Recurrido había incumplido con todas sus obligaciones y responsabilidades como socio de la cooperativa. Señaló que, como resultado de lo anterior, la Junta de Directores se vio obligada a realizarle varios señalamientos al Recurrido, luego de múltiples intentos fallidos de resolver la situación de manera informal.

De igual manera, indicó que, tras haberle fijado al señor Flores Santos un plazo máximo para resolver la situación de conflicto de intereses con un competidor de la Unión, éste continuó retirando mercancía del almacén de la cooperativa y dejó de efectuar los pagos conforme a las normas establecidas por la compañía. Argumentó que, a razón de ello, el Recurrido le adeudaba la

cantidad de $375, 394.25. Destacó que el 8 de agosto de 2024 el señor Flores Santos reconoció la referida deuda en una reunión sostenida con el director ejecutivo de la Unión. Adujo que, a pesar de haber realizado innumerables gestiones de cobro, el Recurrido se ha negado a pagar la suma total adeudada de conformidad con los términos y condiciones del contrato entre las partes. Agregó que el señor Flores Santos pretendía que la Unión aceptara un plan de pago donde se realizaran pagos parciales de $3,500.00 semanales, en lugar de pagar la totalidad de la deuda, en violación de las disposiciones de la Ley Núm. 239-2004, *infra*. En vista de lo anterior, le solicitó al TPI que declarara "Ha Lugar" la "**Demanda**" y ordenara el pago del principal de la deuda de $375,394.00, $225,000.00 por los daños y perjuicios sufridos, así como el pago de las costas, gastos asociados al litigio y honorarios de abogado.

Así las cosas, el 2 de diciembre de 2024, el señor Flores Santos y Supermercados Agranel presentaron su *Solicitud de Descalificación*, a través de la cual informaron que el 13 de agosto de 2024 la representación legal de los Recurridos le cursó cierta misiva a la Junta de Directores de la Unión, con copia al Lcdo. Carlos Paula (en adelante, "Lcdo. Paula"), en la que se identificaron como los representantes legales del señor Flores Santos. Expresaron que dos (2) días después, el Lcdo. Paula le notificó al Lcdo. Morales Sbert que estaría contestando la mencionada misiva en un término de diez (10) días. Arguyeron que a través de dicha respuesta se concretó una comunicación directa entre los representantes legales de las partes, por lo que las disposiciones del Canon 28 del Código de Ética Profesional de Puerto Rico, *infra*, son aplicables a la presente controversia. Manifestaron que, a pesar de lo anterior, el 26 de agosto de 2024 el Lcdo. Paula le cursó una comunicación al señor Flores Santos mediante correo electrónico y la aplicación móvil de "Whatsapp", sin copiar a sus representantes legales. Especificaron que, en la antedicha carta, el Lcdo. Paula instruyó al señor Flores Santos a comunicarse directamente con él para aclarar dudas. Afirmaron que el 20 de septiembre de 2024 el Lcdo. Paula, por segunda ocasión, le envió una comunicación *ex parte* al señor Flores Santos sin remitirle copia a los representantes legales ya conocidos por éste. En armonía con lo anterior, le peticionaron al Tribunal la descalificación del Lcdo. Paula por haberse comunicado

con el señor Flores Santos en ausencia de sus abogados y la paralización de los procedimientos hasta que se dilucidara dicha controversia.

Posteriormente, el 26 de diciembre de 2024, la Unión presentó su "**Oposición a Moción de Descalificación y en Solicitud de Remedio**" (en adelante, "Oposición") mediante la cual alegó que no procedía la descalificación del Lcdo. Paula, puesto que para la fecha de las primeras comunicaciones no había surgido la controversia ni causa de acción que es objeto del presente caso. Expresó que los Recurridos habían utilizado estrategias altamente cuestionables para intentar tomar ventaja procesal en el caso, provocando así gastos innecesarios y dilatando los procedimientos irrazonablemente. Aclaró que la reclamación o controversia de la que trata la carta enviada el 26 de agosto de 2024 es totalmente diferente de la controversia existente entre las partes, tratándose de un caso nuevo y diferente para el cual el señor Flores Santos no había anunciado abogado o representación legal alguna. Adujo que, debido a lo anterior, no tenían ninguna obligación de informarle a los abogados que habían sido contratado en el pasado para otro asunto o caso diferente. Añadió que la representación legal de la Unión nunca le ofreció consejo legal al señor Flores Santos ni lo indujo a error, por lo que alegó que la disposición legal citada es completamente inaplicable.

Enunció que la controversia relacionada con el cobro de dinero por no pagar una deuda vencida es una controversia separada e independiente del anuncio que se le hizo al señor Flores Santos sobre la posible expulsión como socio de la Unión como resultado del conflicto de intereses en el que estaba incurriendo. En sintonía con lo anterior, le solicitó al TPI que declarara "No Ha Lugar" la *Solicitud de Descalificación* presentada en su contra y le impusiera al señor Flores Santos el pago de la cantidad de $5,460.00 por concepto de honorarios de abogado. Ese mismo día, la Peticionaria presentó un escrito intitulado "**Moción presentando por separado Exhibits Confidenciales en apoyo de 'Oposición a moción de descalificación y en solicitud de remedio'**", a la que le adjuntó el *Memorando Privado y Confidencial* de la Unión y cierta carta remitida al señor Flores Santos sobre separación y expulsión de membresía de la cooperativa.

Más adelante, el 24 de enero de 2025, el señor Flores Santos presentó su "**Breve Réplica a: "Oposición a Moción de Descalificación y Solicitud de Remedio**" mediante la cual expresó que los planteamientos invocados por el Lcdo. Paula no cambian el hecho de que éste incurrió en una comunicación *ex parte* con el señor Flores Santos a sabiendas de que éste tenía abogado. Argumentó que el Lcdo. Paula no tenía manera de saber la extensión de su representación legal, por lo cual no podía aseverar que los abogados del señor Flores Santos no fueron contratados para un tema en específico. Además, sostuvo que las alegaciones de cobro de dinero están íntimamente relacionadas con las imputaciones de conflicto de interés. Por último, reiteró que el Lcdo. Paula tenía pleno conocimiento de que el señor Flores Santos estaba representado por abogado y admitió haber incurrido en varias comunicaciones *ex parte* en ausencia de su representación legal. En vista de lo anterior, le solicitó al Tribunal que declarara "Ha Lugar" la *Solicitud de Descalificación*.

Ese mismo día, los Recurridos presentaron su "**Contestación a Demanda y Reconvención**" en la que negaron la mayoría de las alegaciones expuestas en su contra y alegaron que el señor Flores Santos fue expulsado de la cooperativa de manera injustificada, intencional y temeraria. Igualmente, argumentaron que los beneficios que recibieron de la Unión fueron mermados por la administración deficiente de la Peticionaria y los continuos intentos de expulsar al señor Flores Santos. Entre las defensas afirmativas que incluyeron se encuentran las siguientes: (1) insuficiencia de las alegaciones, (2) inexistencia de contrato, (3) daño autoinfligido, (4) inexistencia de daño y (5) mala fe.

Por su parte, en la *Reconvención* precisaron que la cadena de Supermercados Agranel se especializa en la venta al detal de productos, mientras que la Unión se dedica a la venta al por mayor, por lo que dichos negocios están dirigidos a públicos distintos. Expresaron que, para diciembre de 2017, la Unión le requirió al señor Flores Santos un espacio separado y exclusivo para Unión Cash & Carry de al menos 4,000 pies cuadrados, solicitud a la cual este accedió. Indicaron que el acuerdo establecía que el local debía estar ubicado en una zona que fuese viable para ese tipo de negocio y que, como parte de dicho contrato, el señor Flores Santos debía asumir los gastos de habilitar el mencionado espacio,

lo cual incluía la compra de equipos como neveras, congeladores, andamios, equipos de ventilación y área fría. Alegaron que, para mayo de 2024, el señor Flores Santos había invertido en aproximadamente $500,000.00 en el nuevo local y le habían aprobado un préstamo de $700,000.00 para completar el local y adquirir el inventario. Mencionaron que, para su sorpresa, en ese mismo mes, se convocó una asamblea extraordinaria dedicada al señor Flores Santos y a otra socia de la Unión para que cesaran toda relación con los Supermercados Agranel por un supuesto conflicto de intereses. Resaltaron que poco antes de la referida asamblea, la Unión había anunciado planes de iniciar un proyecto al detal bajo el nombre de "Ultra Ahorro", a sabiendas de que el negocio del señor Flores Santos existía hacía 20 años. Agregaron que, debido a la pérdida de su inversión, el señor Flores Santos se vio obligado a ser más cuidadoso con el manejo de su efectivo y comenzó a pagar el balance pendiente de sus compras mediante plazos, los cuales fueron aceptados por la Unión durante siete (7) semanas.

En consecuencia, le solicitaron al Tribunal que declare "Con Lugar" la *Reconvención,* ordene a la Unión a someterse a un procedimiento de auditoría forense y valorización, dicte sentencia declaratoria estableciendo que entre la Unión y el señor Flores Santos existe un plan de pago de $3,500.00, ordene a la Unión al pago de $1,000,000.00 por daños a la reputación del señor Flores Santos y disponga que la Unión cubra las costas y honorarios de abogado.

Así las cosas, el 17 de febrero de 2025, la Unión presentó su "**Contestación a Reconvención y Defensas Afirmativas**". En síntesis, argumentó que el señor Flores Santos no tiene derecho a que se determine el valor presente de su participación. Del mismo modo, acentuó que entre las partes existía un contrato verbal que establecía las condiciones de repago de la mercancía tomada a crédito por un periodo no mayor de 30 a 60 días. Por último, señaló que la reputación del señor Flores Santos no se había dañado ni afectado adversamente en la industria de alimentos, ni en ningún otro ámbito debido a alguna acción, omisión o conducta de la Unión. Así pues, le peticionó al TPI que declare "No Ha Lugar" la *Reconvención*. Finalmente, el 20 de marzo de 2025 el TPI emitió una *Resolución* en la que declaró "Ha Lugar" la *Solicitud de Descalificación* interpuesta por los Recurridos.

Insatisfecha con lo anterior, la Peticionaria presentó el recurso que nos ocupa, mediante el cual le imputó al TPI la comisión de los siguientes errores:

1. Erró el Honorable Tribunal de Primera Instancia al descalificar a la representación legal de la Peticionaria a pesar de que la controversia que existía entre las partes cuando el Recurrido anunció abogados que le representarían para ese asunto se trababa sobre una controversia de expulsión de un socio reglamentada por la Ley General de Sociedades Cooperativas, la cual fue resuelta de forma final y definitiva en una vista administrativa conforme a las disposiciones de dicha ley, por lo cual a la fecha de hoy concluyó esa controversia después de que el Sr. José W. Flores no recurrió en alzada de la determinación tomada como resultado de la vista administrativa que ordena celebrar dicha Ley General de Sociedades Cooperativas, mientras que la controversia y caso que surgió posteriormente y que fue objeto de las comunicaciones del abogado de la Peticionaria al Recurrido se relaciona con una deuda que el Recurrido acumuló y dejó de pagar, y las comunicaciones que son objeto de la descalificación se relacionan únicamente con dicha deuda, lo cual demuestra que las comunicaciones cuestionadas trataron sobre controversias y casos diferentes.

2. Erró el Honorable Tribunal de Primera Instancia al determinar de forma ambigua y confusa a la página 5 de su Resolución que las "*alegaciones, 29, 30, y 31 de la demanda antes citadas son consecutivas a los hechos de posterior a lo ocurrido en el verano de 2024, cuando enviaron el memorando confidencial, ocurrió el incumplimiento de contrato y la deuda por la cual se radicó la presente causa de acción*", sugiriendo que se trataba de las mismas controversias entre las partes, a pesar de que los incumplimientos del Recurrido con ciertas obligaciones y responsabilidades como socio de la cooperativa (tal como incurrir en conflicto de intereses o dedicar su mismo local comercial para representar abiertamente a dos cadenas distribuidoras de alimentos y/o marcas competidoras entre sí), surgieron desde mucho antes y no se relacionaban con el tema y caso de epígrafe sobre la deuda incurrida y la controversia que surgió después cuando posteriormente a la controversia sobre expulsión de su membresía entonces luego dejó de pagar una mercancía que se llevó crédito del almacén de la Peticionaria.

3. Erró el Honorable Tribunal de Primera Instancia al determinar implícitamente en su Resolución que el canon 28 del código de ética profesional aplica de forma inadmisiblemente amplia, sin atención alguna a los hechos de cada caso, y sin importar el alcance, extensión y ámbito de aplicación de la representación legal que había sido anunciada y para cuál caso o controversia específica.

4. Erró el Honorable Tribunal de Primera Instancia al determinar que hubo  incumplimiento del canon 28 del código de ética profesional y al descalificar a la representación legal de la Peticionaria y ordenarle a la Unión de Mayoristas que busque una nueva representación legal para este caso, a pesar de que las comunicaciones en cuestión del abogado de la Peticionaria con el Recurrido trataban de un caso y controversia diferente y separada del caso para el que el Recurrido había notificado abogados, lo cual queda evidenciado por el hecho de que ni siquiera son las mismas partes envueltas en ambos casos, ya que no eran las mismas partes en la controversia que fue resuelta de forma final en una vista administrativa bajo las disposiciones de la Ley General de

Sociedades Cooperativas, en comparación con las partes envueltas en el caso de epígrafe de cobro de dinero.

5. Erró el Honorable Tribunal de Primera Instancia al impedir que la Peticionaria pueda ser representada por el abogado de su selección (lo cual ha provocado serias preocupaciones en la Junta de Directores de la Unión de Mayoristas), privándole de esta manera de su debido proceso de ley constitucional, cuando entendemos que realmente no ha habido violación alguna del canon 28 del código de ética profesional que rige la profesional legal, *y en el peor de los casos cualquier conducta pertinente cualificaría como un error genuino de interpretación de las comunicaciones entre las partes o una negligencia excusable que no causó ningún tipo de daño y que no justifica una sanción tan severa como la descalificación del caso del abogado de la Peticionaria.*

El 30 de abril de 2025, los Recurridos presentaron su "**Alegato de Oposición**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); Mun. de Caguas v. JRO Construction, 201 DPR 703, 711 (2019). A pesar de ser un recurso procesal excepcional y discrecional, el tribunal revisor no debe perder de vista las demás áreas del derecho. Mun. de Caguas v. JRO Construction, *supra,* pág. 711.

Así, con el objetivo de ejercer de manera prudente nuestra facultad discrecional, es preciso acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40; BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023). Esta norma cobra mayor relevancia en situaciones en las que no hay disponibles métodos alternos para asegurar la revisión de la determinación cuestionada. Íd. A esos efectos, la referida Regla establece los siguientes criterios a evaluar:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G.  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Íd.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009). En ese sentido, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR 324, 334 (2005). También se ha definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". BPPR v. SLG Gómez-López, *supra*, pág. 335. En otras palabras, el adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990).  Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. SLG Flores, Jiménez v. Colberg, 173 DPR 843 (2008).

**B.**

La Regla 9.3 de las de Procedimiento Civil establece que un tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los abogados que postulan ante sí, puede descalificar a un abogado que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o que infrinja sus deberes hacia el tribunal, sus representados o compañeros abogados. 32 LPRA Ap. V, R. 9.3. Así, el Tribunal de Primera Instancia puede ordenar la descalificación de un representante legal cuando ello abone a la adecuada marcha de un litigio y sea necesario para la solución justa, rápida y económica de los pleitos. Meléndez v. Caribbean Int'l. News, 151 DPR 649, 661 (2000). Como es sabido, "los procedimientos de descalificación de abogados no constituyen de por sí acciones disciplinarias sujetas a la jurisdicción exclusiva del Tribunal Supremo". K-Mart Corp v. Walgreens de PR, Inc., 121 DPR 633, 637-638 (1988); Liquilux Gas v. Berrios, 138 DPR 850, 864 (1995). La descalificación "es una medida

preventiva para evitar posibles infracciones a los Cánones de Ética Profesional …

[y] funge como un 'mecanismo para asegurar la adecuada marcha de un litigio evitando los actos disruptivos provenientes del abogado'". ORIL v. El Farmer, Inc., 204 DPR 229, 241 (2020) (*citando a* R. Hernández Colón, Práctica Jurídica de Puerto Rico: derecho procesal civil, 6ta ed., San Juan, Ed. Lexis Nexis, 2017, pág. 82); K-Mart Corp v. Walgreens de PR, Inc., *supra*, pág. 637. Particularmente, "la descalificación puede otorgarse con el fin de: (1) prevenir una violación a cualquiera de los Cánones del Código de Ética Profesional o (2) evitar actos disruptivos de los abogados durante el trámite de un pleito". ORIL v. El Farmer, Inc., *supra*, pág. 241.

El Tribunal Supremo ha dispuesto que "[a]l evaluar lo sustantivo de la procedencia de una descalificación, los tribunales deben hacer un análisis de la totalidad de las circunstancias 'para valorar si la actuación del abogado constituye un 'acto disruptivo' o si tiene el potencial de desembocar en una violación de los Cánones del Código de Ética Profesional'". ORIL v. El Farmer, Inc., *supra*, pág. 242; Meléndez Vega v. Caribbean Intern News, *supra*, pág. 662. Para ello, se establecen los siguientes factores:

> (1) si quien solicita la descalificación tiene legitimación activa para invocarla; (2) la gravedad de la posible violación ética involucrada; (3) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (4) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (5) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos. ORIL v. El Farmer, Inc., *supra*, págs. 242-234; *véase, además,* Job Connection Center v. Sups. Econo, *supra*, pág. 597-598 (2012); Liquilux Gas v. Berrios, *supra*, págs. 864-866.

Además, el juez que atiende una moción de descalificación presentada por la parte adversa deberá analizar si la continuación de la representación legal le causará perjuicio o desventaja indebida a quien la solicita. Job Connection Center v. Sups. Econo, *supra*, pág. 598. De igual forma, es menester que se sopese, además, el derecho que le asiste a todo ciudadano de escoger con libertad el abogado que lo represente. ORIL v. El Farmer, Inc., *supra*, pág. 242.

Para ello, se hace indispensable asegurar que "el abogado a ser descalificado tenga al menos la oportunidad de ser oído, pudiendo presentar

prueba en su defensa". <u>Otaño v. Vélez</u>, 141 DPR 820, 828 (1996) (*Per Curiam*) (énfasis suplido). Ello es parte de las protecciones constitucionales que nuestro ordenamiento les garantiza a todos los ciudadanos. <u>Job Connection Center v. Sups. Econo</u>, *supra*, pág. 598. Ello está cimentado en que el remedio de la descalificación no debe imponerse ligeramente y su evaluación debe estar guiada por un análisis sosegado de todas las circunstancias que rodean la controversia. <u>Íd</u>., pág. 597. Es decir, solo debe proceder cuando sea estrictamente necesario, por considerarse un remedio drástico que debe ser evitado si existen medidas menos onerosas que aseguren la integridad del proceso judicial y trato justo a las partes. <u>Íd</u>.

### C.

El Código de Ética Profesional de Puerto Rico establece las normas mínimas que fijan de manera concreta la conducta que la sociedad les exige a los juristas del foro. Dichas reglas tienen como objetivo integrar de manera efectiva y adecuada los principios de vida democrática y de respeto a la dignidad del ser humano. Para cumplir con este fin, el Canon 28 del referido Código regula las comunicaciones que emiten los abogados de una parte hacia la parte contraria. En específico, dicha norma lee como sigue:

> El abogado no debe, **en forma alguna**, comunicarse, negociar ni transigir con una parte representada por otro abogado en ausencia de éste. Particularmente, debe abstenerse de aconsejar o incurrir en conducta que pueda inducir a error a una parte que no esté a su vez representada por abogado.  4 LPRA Ap. IX, C. 28 (énfasis suplido).

Como se observa, el transcrito Canon busca evitar que los abogados obtengan una ventaja indebida mediante acercamientos inapropiados y deshonestos hechos a una parte en ausencia de su representación legal y a su vez, previene que los abogados induzcan a error a personas que no están representadas legalmente. <u>*In re* Axtmayer Balzac</u>, 179 DPR 151, 156 (2010). En este sentido, nuestro máximo foro judicial ha expresado que estas prohibiciones son relativas y no absolutas, por lo que solo se prohíben aquellas comunicaciones realizadas con una parte en ausencia de su representación legal. <u>Íd</u>., págs. 158-159. Es decir, el mencionado principio no proscribe, *per se*, cualquier interacción con una parte que está representada legalmente, **sino que se limita a aquellas en las que el abogado no está presente**. Asimismo, nuestro Tribunal Supremo

ha establecido el procedimiento a seguir para comunicarse con una parte, respetando la relación abogado-cliente que el Canon 28, *supra*, busca salvaguardar. En detalle, expresó lo siguiente:

> En primera instancia, el abogado deberá remitir la comunicación escrita por conducto de la representación legal de la parte contraria. Cuando este método de envío resulte infructuoso y concurran circunstancias apremiantes, el abogado deberá apercibirle a la representación legal de la parte contraria que desea enviar la comunicación escrita directamente a dicha parte. En este aviso se le deberá adelantar copia de la comunicación escrita al abogado de la parte contraria.

> Luego de realizar el aviso antes descrito, el abogado podrá enviar la comunicación escrita simultáneamente a la parte contraria y a su representación legal. Es preferible que dicha comunicación escrita se entregue a la mano simultáneamente, si es que la parte contraria y su representación legal se encuentran en el mismo lugar. De lo contrario, el abogado podrá enviarla por correo certificado con aviso de recibo simultáneamente a la parte contraria y a su representación legal. *In re* Axtmayer Balzac, *supra*, pág. 164.

En otras palabras, de acuerdo con el Canon 28, *supra*, la mejor práctica para comunicarse por escrito con una parte es enviar la comunicación al abogado de la parte y en caso de que este intento sea infructuoso, se deberá notificar a la representación legal de la parte que se tiene la intención de enviar la comunicación directamente a la parte. Así pues, no se podrá enviar la comunicación directamente a la parte hasta que se haya enviado al abogado y se le haya informado de la intención de enviarle una copia a la parte.

**III.**

En el presente caso, la Peticionaria nos solicitó la revocación de la *Resolución* del TPI en la que se declaró "Ha Lugar" la *Solicitud de Descalificación* presentada por los Recurridos.

Surge del expediente ante nuestra consideración que el 22 de mayo de 2024 la Unión celebró una Asamblea Extraordinaria donde se le indicó al señor Flores Santos que tenía un término de nueve (9) meses para cesar todo negocio con Supermercados Agranel por un presunto conflicto de interés. Así las cosas, el 10 de junio de 2024, el señor Flores Santos solicitó la grabación de dichos procedimientos. Dicha misiva fue copiada al Lcdo. Guillermo Somoza Colombani (en adelante, "Lcdo. Somoza Colombani") y al Lcdo. Marcos Morales Sbert (en adelante, "Lcdo. Morales Sbert"). El 20 de junio de 2024, el presidente de la Junta de Directores de la Unión contestó dicha carta y le indicó al señor Flores Santos

que la inspección tenía que ser realizada en las facilidades de la oficina principal de la Unión durante horas laborables y la misma no podía perjudicar ni interrumpir los trabajos, negocios, actividades y servicios de dicha entidad.[1] Ese mismo día, la Unión envió a todos los socios de la cooperativa un "**Memorando Privado y Confidencial**", en el que abordó la situación de conflicto de intereses discutida en la referida asamblea y les explicó las consecuencias de infringir las leyes y reglamentos aplicables a la cadena.

Más adelante, el 13 de agosto de 2024, el Lcdo. Somoza Colombani y el Lcdo. Morales Sbert le notificaron a la Unión que representan legalmente al señor Flores Santos y que habían recibido y analizado la carta del 20 de junio de 2024. Dos (2) días después, el 15 de agosto de 2024, el Lcdo. Carlos Paula envió un correo electrónico a la representación legal del señor Flores Santos mediante el cual les informó que estaría contestando la misiva en un término de diez (10) días. A pesar de lo anterior, el 26 de agosto de 2024, el Lcdo. Paula le cursó una comunicación *ex parte* al señor Flores Santos mediante correo electrónico y por la aplicación de "Whatsapp" en la que, entre otras cosas, le indicó al señor Flores Santos lo siguiente:

> Si usted tuviera alguna duda o pregunta relacionada con el contenido de esta comunicación puede comunicarse por escrito con el abogado suscribiente a su más pronta conveniencia. Si no recibimos respuesta de su parte, ni la Unión de Mayoristas tampoco recibe el pago de la cantidad total adeudada, para la fecha antes indicada del próximo 6 de septiembre, por instrucciones de la Junta de Directores nos veremos obligados a proceder legalmente según antes indicado, sin ofrecerle ninguna otra notificación previa.[2]

Así las cosas, el 5 de septiembre de 2024, el señor Flores Santos le contestó la referida comunicación mediante carta en la que le expresó que la suma reclamada no era el balance correcto. Posteriormente, el 20 de septiembre de 2024, el Lcdo. Paula, por segunda ocasión, le envió una comunicación al señor Flores Santos mediante correo electrónico, **sin copiar a su representación legal**. En detalle, le expresó, entre otras cosas, lo siguiente:

> Según indicado aquí arriba, el balance de su deuda a la fecha de hoy asciende a $375,394.25 y ésta es la cantidad "desglosada" según las facturas y documentos de despacho de mercancía, de los cuales usted ya tiene copia y conforme a los depósitos que usted bien sabe que ha realizado. De tal manera, no hace falta realizar el

---

[1] *Véase*, Apéndice del Recurso de *Certiorari*, pág. 25.
[2] *Véase*, Apéndice del Recurso de *Certiorari*, pág. 38.

desglose adicional, alguno, en vista de que los cambios en el balance de la deuda responden a sus depósitos realizados en la cuenta bancaria de la Unión de Mayoristas, sino que lo que procede es que usted realice el pago total de la deuda de inmediato, según usted tiene la capacidad de hacerlo, ya que nada ha cambiado ese sentido, contrario a lo que usted alega en su carta dirigida al Lcdo. Paula

Es imposible llegar a algún tipo de acuerdo relacionado con un plan de pago distinto al que usted ha intentado imponer, ni ninguno otro, ya que la postura asumida por usted ha sido en represalias contra la Unión de Mayoristas por habérsele reclamado formalmente el tema del conflicto de intereses con Agranel y por advertirle a usted sobre las consecuencias que tendrá su conducta. Usted no ha tenido ningún cambio en su capacidad de pago, ni han ocurrido las cosas que usted intenta establecer, por lo que se nos ha informado que no existe posibilidad de establecer plan de pago alguno, sino que lo que procede es que usted realice de inmediato el pago del balance total de la deuda.[3]

Tras la evaluación exhaustiva de los documentos que obran en el legajo apelativo, al igual que los autos electrónicos del foro recurrido, encontramos que el foro *a quo* no indició ni se desprende de los mismos que haya actuado de forma arbitraria, caprichosa, haya abusado al ejercer su discreción o cometido algún error de derecho. Tampoco la Peticionaria demostró que el TPI abusara de su discreción, actuara con perjuicio o cometiera un error manifiesto en su determinación. Más aún, cuando nuestro Código de Ética Profesional, así como nuestra jurisprudencia interpretativa al respecto, establecen que una parte no puede comunicarse directamente con la parte contraria cuando esta última cuenta con representación legal.

Además, no podemos perder de vista que el Lcdo. Paula se comunicó de forma *ex parte* con el señor Flores Santos, aun cuando ya había sido notificado de que éste contaba con representación legal. De hecho, así lo demuestran las comparecencias ante el TPI suscritas por el propio Lcdo. Paula. Es decir, pese a estar informado de dicha representación, procedió a establecer contacto, lo que llevó al señor Flores Santos a responder la carta del 26 de agosto de 2024, lacerando así la relación abogado-cliente existente entre el señor Flores Santos y sus representantes legales. A ello se le abona el hecho de que era imposible que el Lcdo. Paula o la Unión conocieran los detalles o extensión de los asuntos por los cuales el señor Flores Santos contrató los servicios de sus abogados que nos lleva a acoger la teoría de que las misivas *ex parte* estaban relacionadas con otro

---

[3] *Véase*, Apéndice del Recurso de *Certiorari*, pág. 45.

asunto distinto a las controversias que fueron traídas ante el TPI en el pleito de autos.

En suma, concluimos que de los autos no se desprende indicador alguno que requiera nuestra intervención con la *Resolución* recurrida y tampoco hallamos fundamento legal alguno que amerite la expedición del auto de *certiorari*, al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de la presente Resolución, *denegamos* la expedición del auto de *certiorari* ante nos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones